# In the United States Court of Federal Claims

No. 19-1696C

(Filed: January 10, 2020)

| | |
|---|---|
| ************************************* * <br> * <br> W&G MACHINE COMPANY, INC., * <br> * <br> * <br> Plaintiff, * <br> * <br> v. * <br> * <br> THE UNITED STATES, * <br> * <br> Defendant, * <br> and * <br> * <br> THE BOEING COMPANY, * <br> * <br> Defendant-Intervenor. * <br> * <br> ************************************* * | Bid Protest; Standing; Prejudice; "Substantial Chance"; Direct Economic Interest; Subject-Matter Jurisdiction; Motion to Dismiss; RCFC 12(b)(1); RCFC 12(b)(6); Small Business Administration; Bundling; Cancellation of Solicitation; Sole-Source Award. |

*James M. White*, with whom were *William Pannier* and *Barbara Fiero*, Marshall & White, PC, Washington, D.C., for Plaintiff W&G Machine Company, Inc.

*Amanda L. Tantum*, Senior Trial Counsel, with whom were *Joseph H. Hunt*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Douglas K. Mickle*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., *Linwood I. Rogers*, Deputy Chief Counsel, DLA Counsel Aviation, United States Department of Defense, Washington, D.C., and *Karen Hunter*, Trial Attorney, United States Small Business Association, Washington, D.C., for Defendant.

*Scott M. McCaleb* with whom were *Tracye W. Howard* and *George E. Petel*, Wiley Rein LLP, Washington, D.C., for Intervenor The Boeing Company.

OPINION AND ORDER ON MOTIONS TO DISMISS

WHEELER, Judge.

This bid protest involves bundled solicitations to supply helicopter parts to the Defense Logistics Agency ("DLA" or "the Agency"). W&G Machine Company, Inc. ("W&G"), an incumbent small business that has provided helicopter parts to DLA, challenges three of DLA's solicitations. After W&G filed its complaint, DLA announced it was cancelling its solicitation relating to its H-53E (Super Stallion) helicopter program, one of the solicitations at issue. W&G opposes DLA's decision to bundle material and supply chain integration services for its Apache ("AH-64") and Chinook ("CH-47") helicopter programs, and its Federal Supply Group 53.

First, W&G challenges the agency's decision to bundle the requirements for spare parts for the Chinook and Apache helicopters into a sole source award, the "AH-64/CH-47 bundled procurement." W&G argues that the AH-64/CH-47 bundled procurement is unlawful because it consolidates national stock numbers ("NSNs") without justification, thereby favoring Original Equipment Manufacturers at the expense of small businesses.

Second, W&G disputes DLA's decision to combine approximately 221,099 national stock numbers relating to "Federal Supply Class 53 – Hardware and Abrasives," into a single solicitation. Compl. ¶ 1. W&G contends that DLA's decision to bundle these national stock numbers "marginalizes" W&G and "fundamentally alter[s] and diminish[es] the agency's competitive procurement landscape." Dkt. No. 18 at 7.

The Government and Defendant-Intervenor moved to dismiss W&G's complaint pursuant to the Rules of the Court of Federal Claims ("RCFC") 12(b)(1) for lack of subject matter jurisdiction and, in the alternative, RCFC 12(b)(6) for failure to state a claim upon which relief can be granted. Ultimately, W&G fails to establish that it is an "interest party" as defined under the Tucker Act, 28 U.S.C. § 1491(b)(1). The Court, therefore, lacks subject-matter jurisdiction to consider any of W&G's claims.

Background

I.   Solicitation No. SPE4A2-17-R-0032

On November 1, 2019, DLA cancelled the third solicitation originally included in W&G's complaint. This solicitation related to the procurement of parts for the H-53E (Super Stallion) helicopter program, Solicitation No. SPE4A2-17-R-0032, rendering this portion of W&G's complaint moot.[1] See *H-53E Sustainment Support Initiative*, GOVTRIBE

---

[1] W&G does not contest dismissing the portion of its protest relating to the H-53E procurement. Dkt. No. 18 at 5 n.1.

(Nov. 1, 2019, 10:57 AM), https://govtribe.com/opportunity/federal-contract-opportunity/h-53e-sustainment-support-initiative-spe4a217r0032; see also Dkt. No. 14 at app. 1.

II.     Solicitation No. SPAPR1-18-R-002U (the "AH-64/CH-47 Solicitation")

On December 7, 2017, DLA issued a "Potential Sources Sought" notice on FedBizOpps ("FBO") explaining that "the Defense Logistics Agency (DLA) intends to contract on a sole source basis with the Boeing Company [("Boeing")] . . . to execute a comprehensive and holistic performance based supply chain management program." Compl., Ex. 8 at 1–2. DLA posted the notice to "gauge potential interest in subcontracting opportunities." Id. at 2. The Potential Sources Sought notice asked those interested in being a prime or subcontractor to respond by December 21, 2017. Only Boeing responded to the December 7 notice. Compl. ¶ 49; Dkt. No. 14 at 8.

On December 22, 2017, DLA issued its second notice, a Presolicitation Notice, announcing the agency's intent to award Boeing the contract. Compl., Ex. 5. The notice identified the parts that the solicitation would cover and included a response date of January 5, 2018. On January 18, 2018, DLA sent a letter with this information to small business contractors, including W&G, who had previously supplied the national item identification numbers that would be bundled under the new contract. Compl. Ex. 9; Dkt. No. 13 at 9. W&G did not respond to DLA's December 22, 2017 notice or January 2018 letter. Compl. ¶ 92; Dkt. No. 13 at 9; Dkt. No. 14 at 8.

On January 19, 2018, DLA issued a third FBO notice of its intent to bundle its spare parts requirements for the Apache and Chinook helicopter programs. Compl. Ex. 3. The notice included the results of the agency's market research, bundling analysis, expected cost savings, impact on small businesses, historical acquisition, and a small business action plan. Id. The notice stated that on October 31, 2019, DLA anticipated awarding "[a] nine (9) (5 year price base period and a 4 year unpriced option period) year Firm Fixed Price Incentive Fee proposal for the acquisition of a comprehensive and holistic performance based supply chain management program in support of the AH-64 and CH-47 aircraft parts with The Boeing Company (cage: 1PXV4), estimated at $450 million." Id.

On October 31, 2019, W&G filed its complaint with the Court. On November 13, 2019, DLA notified the Court that it intended to award the contract on November 19, 2019, to Boeing. Dkt. No. 15 at 1.

III.    Solicitation No. SPE4A6-19-R-FG53 (the "FSG 53 Solicitation")

DLA posted a Sources Sought Notice on August 27, 2018, announcing its intent to conduct market research to find sources to supply inventory and capabilities for all national stock numbers under Federal Supply Class 53. Dkt. No. 14 at app. 21. The notice stated that it anticipated awarding a ten-year term, single award contract covering 14,584 national

stock numbers from "Federal Supply Class 53 – Hardware and Abrasives." Id. at app. 22. DLA included a Request for Information ("RFI") "to allow industry to provide input regarding not only your capabilities relative to the proposed requirement, but also to provide input of your experience and best practices that will allow the Government to develop an acquisition/solicitation strategy." Id. at app. 24. The notice tentatively set an industry day with a question and answer session for September 25, 2018. Id. W&G did not answer the RFI or attend the industry day. Id. at app. 26.

After the close of its research, DLA, on August 13, 2019, issued a notice of intent to bundle "approximately 221,099 national stock numbers (NSNs) into a procurement for Federal Stock Group 53 (FSG 53) performance based supply chain management support." Compl. Ex. 2 at 1. Almost a month later, on September 6, 2019, DLA issued a presolicitation notice for Solicitation No. SPE4A5-19-R-FG53. Compl. Ex. 22.

By letter dated September 24, 2019, the Small Business Administration ("SBA") recommended that DLA unbundle the FSG 53 solicitation. Dkt. No. 14 at app. 6–8. On October 1, 2019, contracting officer Randall Dortch detailed the agency's rationale for rejecting SBA's recommendation. Id. at app. 6. Shortly thereafter, on October 3, 2019, SBA appealed to the head of contracting authority, Cathy Contreras. Id. at app. 9–11. Ms. Contreras subsequently rejected SBA's appeal on October 8, 2019, concluding that "the bundled solicitation will achieve measurably substantial benefits for the Defense Logistics Agency and the Department of Defense." Id. at app. 12–13. SBA then appealed this decision to the Secretary of Defense, DLA's agency head, and asked the agency to suspend further actions pending the outcome of SBA's appeal. Id. at app. 14–20; see also FAR 19.505.

On December 13, 2019, the Director of DLA Acquisition rejected SBA's appeal and announced that the solicitation would remain bundled. Dkt. No. 22 at 1. DLA also noted that an award was imminent.[2] Dkt. No. 22 at 1.

## Procedural History

On October 31, 2019, W&G filed its complaint. Dkt. No. 1. The next day, Boeing filed a motion to intervene. Dkt. No. 6. The Court granted Boeing's motion to intervene on November 5, 2019, after hearing arguments at the initial scheduling conference. Dkt. No. 10–11. On November 5, 2019, Boeing filed a motion to dismiss. Dkt. No. 13. The Government also filed a motion to dismiss on November 7, 2019. Dkt. No. 14.

---

[2] Citing an award's imminency, the Government withdrew its argument in Section IV.A of its motion to dismiss that W&G's claims relating to the FSG 53 solicitation were not ripe. Dkt. No. 22 at 1.

On November 13, 2019, the Government filed a notice indicating that DLA intended to award the AH-64/CH-47 bundled procurement for the Apache/Chinook Global Support Program to Boeing on November 19, 2019. Dkt. No. 15. This procurement, the Government explained, covers both "NSNs previously obtained through transactional support, including from the protestor, W&G…, and NSNs that were previously supplied by [Boeing]…." Id. at 1. The Government noted that a delay in Boeing's procurement would affect the availability of national stock numbers unrelated to this protest. Id.

Discussion

I.   Standard of Review

   A.   Bid Protest Jurisdiction

The Tucker Act grants this Court subject matter jurisdiction over bid protests. 28 U.S.C. § 1491(b)(1) (2012). In a bid protest, the Court reviews an agency's decision pursuant to the standards set out in the Administrative Procedure Act ("APA"). 28 U.S.C. § 1491(b)(4) (2012); 5 U.S.C. § 706 (2012). Under the APA, this Court shall set aside an agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1350–51 (Fed. Cir. 2004).

An agency's decision does not violate the APA if the agency "provide[s] a coherent and reasonable explanation of its exercise of discretion." Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332–33 (Fed. Cir. 2001). An agency cannot "entirely fail[] to consider an important aspect" of a problem. Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). Rather, an agency must articulate a "rational connection between the facts found and the [policy] choice made." Id. (citation omitted). Furthermore, when an agency alters a past policy, it must "supply a reasoned analysis for the change beyond" what may be required if the agency had not acted in the first instance. Id. at 42.

The Court's review is "highly deferential" to the agency as long as the agency has rationally explained its decision. Bannum, Inc. v. United States, 91 Fed. Cl. 160, 169–70 (2009). But the Court will "not supply a reasoned basis for the agency's action that the agency itself has not given." Motor Vehicle Mfrs. Ass'n of U.S., Inc., 463 U.S. at 43 (citation omitted).

   B.   Motion to Dismiss

When a defendant moves to dismiss a complaint under RCFC 12(b)(1), the Court must "assume all factual allegations to be true and…draw all reasonable inferences in plaintiff's favor." Wurst v. United States, 111 Fed. Cl. 683, 685 (2013) (quoting Henke v.

5

United States, 60 F.3d 795, 797 (Fed. Cir. 1995)).  However, when the defendant challenges the Court's jurisdiction, the plaintiff must support its jurisdictional allegations with "competent proof." McNutt v. Gen. Motors Acceptance Corp. of Indiana, 298 U.S. 178 (1936).  Accordingly, a plaintiff must establish that jurisdiction exists "by a preponderance of the evidence." Wurst, 111 Fed. Cl. at 685 (citing Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988)).

For a Rule 12(b)(6) motion, a plaintiff need only assert "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Granting a motion under Rule 12(b)(6) is "appropriate only when it is beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle[ ] him to relief." Fireman v. United States, 44 Fed. Cl. 528, 537 (1999) (quoting Ponder v. United States, 117 F.3d 549, 552–53 (Fed. Cir. 1997)).

## II.  W&G Lacks Standing to Bring This Bid Protest

Only an "interested party" has standing to challenge a contract award.  See Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006).  An interested party is (1) an actual or prospective bidder who (2) has a direct economic interest that the contract award would affect.  See 28 U.S.C. § 1491(b)(1); Veteran Tech. Integrators, LLC v. United States, 143 Fed. Cl. 794, 803 (2019); Banknote Corp. of America, Inc., 365 F.3d at 1352.  To have standing, a party "who has not actually submitted an offer must be *expecting* to submit an offer prior to the closing date of the solicitation." Digitalis Educ. Sols., Inc. v. United States, 664 F.3d 1380, 1385 (Fed. Cir. 2012) (quoting Rex Serv., 448 F.3d at 1308)).  Moreover, a party loses the opportunity to qualify as an actual or prospective bidder once the proposal period ends.  Rex Serv., 448 F.3d at 1308.

To prove a direct economic interest, an interested party must demonstrate that it had a "substantial chance" of winning the contract.  See Orion Tech., Inc. v. United States, 704 F.3d 1344, 1348 (Fed. Cir. 2013); Myers Investigative & Sec. Serv., v. United States, 275 F.3d 1366, 1378 (Fed. Cir. 2002) ("When a party contends that the procurement procedure in a sole-source case involved a violation of a statute, regulation, or procedure, it must…show [ ] that it would have had a substantial chance of receiving the award."). "[B]ecause the question of prejudice goes directly to the question of standing, the prejudice issue must be reached before addressing the merits." Labatt Food Serv., Inc. v. United States, 577 F.3d 1375, 1378 (Fed. Cir. 2009).

The Government moved to dismiss this matter upon the grounds that W&G waived its right to challenge the bundled procurements.  Dkt. No. 14 at 15.  The Government argues that W&G has no standing because it "failed to make any response [ ] to DLA's notices posted on FedBizOpps" and waited nearly two years after the notices to bring this protest.

6

Id.  The Government further contends that W&G is not a qualified bidder that could have competed for the contract to provide the consolidated parts under the AH-64/CH-47 sole-source procurement or the bundled FSG 53 contract.  Dkt. No. 14 at 8–9, 14–15.  Therefore, the Government concludes that, because W&G did not submit a proposal or respond to the agency's notices, it is not an actual or prospective bidder.  Id.

W&G responds that it has not waived its claims because it is a prospective offeror and the agency has deprived W&G of the opportunity to compete for the consolidated contracts.  Dkt. No. 18 at 13.  However**,** "to qualify as an actual or prospective offeror, a party that disagrees with a procuring agency's decision not to conduct a competitive procurement must so advise the agency, either by responding to one of the agency's notices concerning the procurement or by submitting a proposal." Proxtronics Dosimetry, LLC v. United States, 128 Fed. Cl. 656, 675–76 (2016).

To be an actual or prospective bidder, W&G needed to respond to at least one of the agency's notices.  See Digitalis Educ. Solutions, Inc., 664 F.3d at 1385; Rex Serv., 448 F.3d at 1307–08.  Here, W&G did not submit a proposal and waited until the anticipated award date to file this protest.  W&G was not prevented from responding to the agency's notices or submitting a proposal.  Yet, W&G failed to respond to the agency's December 7, 2017 "Potential Sources Sought" notice, its December 22, 2017 "Presolicitaiton Notice," and the agency's January 9, 2018 notice of its "Intent to Bundle Requirements," which included an anticipated award date of October 31, 2019 to Boeing.  Dkt. No. 13 at 4–5.  Moreover, DLA sent W&G a letter explaining that the agency "intends to transition away from the traditional LTC [long-term contract] and/or purchase orders that we have or may have had with your company for the items identified in the attached list."  Compl., Ex. 9.  Both the notices and the letter should have alerted W&G that the proposed solicitations would likely affect the products W&G provides.  However, W&G waited almost two years to protest the solicitations.  Therefore, W&G is not an actual or prospective bidder.

The Government further argues that even if W&G is an interested party or an actual or prospective bidder, it does not have a "direct economic interest."  The Government highlights W&G's failure to establish that it could perform the types of work required by either the AH-64/CH-47 contract or the FSG 53 contract.  Dkt. No. 13 at 15–20.

Here, W&G's failure to respond during this almost two-year period means it is unlikely that the Government was even aware that W&G was interested in the solicitations, making it difficult for W&G to show it has a "substantial chance" of being awarded the contract.  Digitalis Educ. Sols., Inc., 664 F.3d at 1385.  W&G, by its own admission, presented no evidence that it was qualified to secure the awards.  Although W&G has provided at least four of the helicopter parts in the past five years to DLA, the evidence before the Court shows that W&G could not have competed for the planned AH-64/CH-47 solicitation to procure and maintain the approximately 1,200 consolidated national stock numbers or the FSG 53 solicitation bundling approximately 221,099 national stock

7

numbers. Dkt. No. 13 at 6; Dkt. No. 21 at 16. Specifically, W&G has not shown that it has experience providing such comprehensive services. Although there is no dispute that W&G has performed government contracts to supply aircraft parts to DLA, W&G has provided no evidence to demonstrate that it has experience performing under a government contract of comparable value to the solicitations at issue in this case. In fact, W&G concedes it does not have the capability to perform the AH-64/CH-47 or the FSG 53 solicitations. Compl. ¶ 73. Thus, W&G does not have a direct economic interest.

As a result, W&G fails both prongs of the "interested party" test. Accordingly, W&G's protest is dismissed for lack of standing and the Court need not reach the additional issues raised in this case.

## Conclusion

For the reasons set forth above, the Court GRANTS the Government's motion to dismiss. The Clerk of the Court is directed to dismiss Plaintiff's complaint. No costs.

IT IS SO ORDERED.

                                                s/Thomas C. Wheeler
                                                THOMAS C. WHEELER
                                                Judge